UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| RSM MCGLADREY, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> JOHN KILEY, MARTIN JUERGENS, and ) <br> CYNTHIA STRONG, ) <br> ) <br> Defendants. ) <br> ) | CIVIL ACTION NO. <br><br> **COMPLAINT** <br><br> **[JURY DEMAND]** |

Plaintiff, RSM McGladrey, Inc. ("RSM"), for its Complaint against John Kiley, Martin Juergens, and Cynthia Strong ("Defendants") hereby alleges as follows:

## I.   PARTIES

1. RSM is a Delaware corporation, with its principal place of business in Minnesota.

2. John Kiley is a Washington resident. On information and belief, he resides in Thurston County, Washington.

3. Martin Juergens is a Washington resident. On information and belief, he resides in Thurston County, Washington.

4. Cynthia Strong is a Washington resident. On information and belief, she resides in Thurston County, Washington.

COMPLAINT   -1-

DORSEY & WHITNEY LLP
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104
PHONE: (206) 903-8800
FAX: (206) 903-8820

## II. JURISDICTION AND VENUE

5. The Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332, as the amount in controversy exceeds $75,000, exclusive of interest and costs, and the matter is between citizens of different states.

6. Venue and personal jurisdiction properly exist in this judicial district because all Defendants reside in this district.

## III. FACTS

7. RSM is a national firm offering business and tax consulting, wealth management, and retirement resources.

8. In August of 2007, RSM hired John Kiley, Martin Juergens, and Cynthia Strong to become part of its wealth management and investment advisory practice located in Olympia, Washington. Kiley and Juergens previously conducted investment advisory and securities brokerage services through another firm. Strong was their assistant.

9. These hires were subject to several contractual arrangements, as described further below.

<u>The Kiley Purchase Agreement and Amendment</u>

10. Effective August 10, 2007, Kiley and RSM entered into a Purchase Agreement (the "Purchase Agreement"). The Purchase Agreement as well as all other agreements discussed herein are hereby incorporated by reference as if fully set forth herein. In the Purchase Agreement, RSM purchased Kiley's investment advisory client practice and goodwill associated therewith. RSM paid Kiley pursuant to a payment schedule containing specific milestones. If all milestones were met, the total purchase price would be $1 million, made in three installments – the first of $333,000; the second of $167,000; and the third of $500,000.

11. RSM made the first two payments to Kiley under the Purchase Agreement, totaling $500,000. Kiley did not satisfy the milestone for payment of the remaining $500,000.

12. Effective May 12, 2009, Kiley and RSM entered into an Amendment to the Purchase Agreement (the "Amendment"). The Amendment amended the terms of the Purchase

COMPLAINT -2-

Agreement, so that Kiley could receive a final payment of $447,626 even though Kiley had not achieved the original milestone. RSM paid Kiley $447,626 as the final payment under the Purchase Agreement and Amendment.

13. Section 8.1 of the Purchase Agreement is a confidentiality agreement, which generally prohibits Kiley from disclosing to any other party or otherwise using any RSM confidential information (including information about clients who were Kiley's prior to the Purchase Agreement), except for purposes of the Purchase Agreement itself.

14. Section 8.2 of the Purchase Agreement is a non-competition agreement, which generally prohibits Kiley during his employment and for one year after the termination of his employment from servicing or soliciting RSM clients (including clients who were Kiley's prior to the Purchase Agreement).

15. Section 8.2 of the Purchase Agreement is subject to Section 8.3 of the Purchase Agreement. Under Section 8.3, if Kiley voluntarily left RSM within six years, Kiley could purchase from RSM the right to solicit certain clients, who were his clients prior to the effective date of the Purchase Agreement. The Purchase Agreement provided that these clients would be listed on an Exhibit B to the Purchase Agreement. The cost for purchasing this right to solicit the relevant clients was set forth in a payment schedule in the Purchase Agreement, which payment schedule was amended in connection with the Amendment.

16. Under the Purchase Agreement, violations of Section 8.1 and Section 8.2 of the Purchase Agreement are subject to the remedy provisions of Section 8.4. Section 8.4 provides in part that RSM may seek actual or liquidated damages for any violations of Sections 8.1, 8.2, or 8.3, with liquidated damages calculated as 250% of the contractually calculated annualized revenue for each client at issue. Section 8.4 also provides that RSM (and only RSM) shall be entitled to recover from Kiley its costs, attorneys' fees and expenses for any action taken to enforce Sections 8.1, 8.2, 8.3 or 8.4.

17. The Purchase Agreement contains an arbitration provision (Section 9.14). However, under the Purchase Agreement's terms, disputes with respect to violations of the non-

COMPLAINT         -3-

**DORSEY & WHITNEY LLP**
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104
PHONE: (206) 903-8800
FAX: (206) 903-8820

competition provision (Section 8.2) and confidentiality provision (Section 8.1) are excluded from the arbitration provision and are not subject to arbitration, as set forth in Section 8.4 and Section 9.14.

18. Pursuant to Section 9.11, the Purchase Agreement is to be governed by and interpreted under Minnesota law.

The Employment Agreements

19. At the time of his hiring, and effective August 10, 2007, Kiley also executed an employment agreement for wealth management with RSM ("Kiley Employment Agreement").

20. Effective August 13, 2007, Juergens executed an employment agreement for wealth management with RSM ("Juergens Employment Agreement").

21. Effective August 22, 2007, Strong executed an employment agreement for wealth management with RSM ("Strong Employment Agreement").

22. All three of these Employment Agreements contained contractual agreements restricting the use of confidential information and restricting the servicing or soliciting of RSM clients following the end of employment.

23. Paragraph 6 of the Employment Agreements generally prohibit Kiley, Juergens, and Strong from directly or indirectly using or disclosing to any party any trade secrets or other confidential information learned through RSM.

24. Paragraph 7 of the Employment Agreements generally prohibit Kiley, Juergens, and Strong from servicing or soliciting any of RSM's clients, customers or accounts for one year after the termination of employment.

25. Under Paragraph 9 of the Employment Agreements, RSM may seek actual or liquidated damages for any violations of Paragraphs 6 or 7. Liquidated damages under the Employment Agreements are calculated as 250% of the contractually calculated annualized revenue for each client at issue.

26. Paragraph 10 of the Employment Agreement provides that RSM is entitled to recover its costs, attorneys' fees, and litigation expenses in any action to enforce Paragraphs 6, 7,

COMPLAINT   -4-

**DORSEY & WHITNEY LLP**
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104
PHONE: (206) 903-8800
FAX: (206) 903-8820

or 9 of the Employment Agreement. The Employment Agreements do not contain any arbitration provision.

27. Under Paragraph 13, the Employment Agreements are to be governed by and interpreted under Minnesota law.

The Abrupt Departure of Kiley and Juergens

28. In April 2009, Strong left the employ of RSM. On information and belief, Strong was subsequently hired by Kiley and/or Juergens to assist them with a new, competing wealth management operation.

29. Unbeknownst to RSM, in July 2009, while they were still employed at RSM, Kiley and Juergens secretly formed a separate wealth management firm (Kiley Juergens Wealth Management LLC).

30. On or about September 4, 2009, Kiley and Juergens abruptly announced their immediate resignation from RSM. Under Paragraph 1 of their Employment Agreements, before terminating their employment, Kiley was required to provide four weeks' written notice and Juergens was required to provide three weeks' written notice. However, in order to catch RSM by surprise and to immediately begin competing and benefiting improperly from their new business, neither Kiley nor Juergens provided RSM with any advance notice whatsoever.

31. Since that time, if not before, Kiley, Juergens, and Strong have been operating through Kiley Juergens Wealth Management LLC and competing against RSM. In connection with this separate, competing wealth management business, they have used RSM's confidential documents and information and have serviced and/or solicited RSM clients (or attempted to do so), all in direct violation of their contractual obligations to RSM.

32. On or about September 14, 2009, Kiley paid RSM (through checks from both Kiley and Juergens) $447,626, pursuant to Section 8.3 of the Purchase Agreement. Under Section 8.3 of the Purchase Agreement and Amendment, this was the amount that Kiley could pay RSM for the right to solicit the clients who were Kiley's clients before the Purchase Agreement was effective.

DORSEY & WHITNEY LLP
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104
PHONE: (206) 903-8800
FAX: (206) 903-8820

33. Kiley's payment gave Kiley the right to solicit only certain clients as set forth in the Purchase Agreement. It did not have any bearing on the contractual obligations of Juergens or Strong, who were not parties to the Purchase Agreement or Amendment, and whose obligations arise solely under their Employment Agreements.

### IV. CAUSES OF ACTION

**A. First Cause of Action: Breach of Contract by All Defendants**

34. RSM incorporates all allegations set forth above as if fully set forth herein.

35. RSM entered into enforceable contracts with each of the Defendants – i.e., the Employment Agreements.

36. All of the Defendants have breached their contracts with RSM, as set forth herein and to be proven at trial. In breach of Paragraph 6 of their Employment Agreements, Kiley, Juergens, and Strong have taken, used, and/or disclosed to other parties (including Kiley Juergens Wealth Management LLC) confidential documents and information belonging to RSM. Moreover, in breach of Paragraph 7 of their Employment Agreements, Kiley, Juergens, and Strong have serviced and/or solicited RSM clients, customers, and/or accounts (or attempted to do so).

37. As a result of these breaches of contract, RSM has been damaged in an amount to be proven at trial.

38. Pursuant to Paragraph 9 of the Employment Agreements, RSM is entitled to actual or liquidated damages, at its discretion, and is further entitled to recover from Kiley, Juergens, and Strong all of its attorneys' fees, costs, and litigation expenses. RSM is also entitled to prejudgment interest to the extent available by law.

**B. Second Cause of Action: Breach of Contract by Kiley**

39. RSM incorporates all allegations set forth above as if fully set forth herein.

40. RSM entered into an enforceable contract with Kiley – i.e., the Purchase Agreement.

COMPLAINT    -6-

DORSEY & WHITNEY LLP
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104
PHONE: (206) 903-8800
FAX: (206) 903-8820

41.     Kiley has breached his contract with RSM, as set forth herein and to be proven at trial.  In breach of Paragraph 8.1 of the Purchase Agreement, Kiley has used and/or disclosed to third parties (including Juergens, Strong, and Kiley Juergens Wealth Management LLC) RSM confidential information.  In breach of Paragraph 8.2 of the Purchase Agreement, Kiley has serviced and/or solicited clients who he had no right to service and/or solicit.

42.     Although Kiley made a payment under Paragraph 8.3 of the Purchase Agreement, he has serviced and/or solicited clients who were not covered by Paragraph 8.3 and that payment, and who he therefore had no right to service and/or solicit even after the payment.

43.     As a result of Kiley's breaches of contract, RSM has been damaged in an amount to be proven at trial.

44.     Pursuant to Section 8.4 of the Purchase Agreement, RSM is entitled to actual or liquidated damages, at its discretion, and is further entitled to recover from Kiley all of its attorneys' fees, costs, and expenses.  RSM is also entitled to prejudgment interest to the extent available by law.

**C.     Third (Alternative) Cause of Action:  Rescission Of Purchase Agreement**

45.     RSM incorporates all allegations set forth above as if fully set forth herein.

46.     On information and belief, Kiley may contend that he is not in breach of the Purchase Agreement and/or Employment Agreement because his understanding of the clients covered by Section 8.3 and Exhibit B of the Purchase Agreement (and his payment thereunder) is broader than RSM's understanding of the clients covered by Section 8.3 and Exhibit B of the Purchase Agreement.

47.     Accordingly, *in the alternative only*, RSM is entitled to rescission of the Purchase Agreement under the doctrine of mistake.  RSM and/or Kiley were mistaken as to a basic assumption regarding the existing facts at the time of execution, namely the identity of Kiley's clients as covered by Section 8.3 and Exhibit B of the Purchase Agreement.  This mistake related to the fundamental purpose and nature of the Purchase Agreement, and RSM would not have entered into the Purchase Agreement in the same form had it known of the mistake.

COMPLAINT     -7-

DORSEY & WHITNEY LLP
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104
PHONE: (206) 903-8800
FAX: (206) 903-8820

48.     If, *in the alternative only*, RSM is therefore entitled to rescission of the Purchase Agreement, then RSM is entitled to repayment by Kiley of the $500,000 originally paid by RSM to Kiley under the Purchase Agreement that has not been repaid. Furthermore, all of Kiley's attempted or actual servicing and/or solicitation of RSM clients, which will be proven at trial, will be subject *solely* to the terms of the Kiley Employment Agreement, which prohibited Kiley from servicing and/or soliciting any RSM clients (and will entitle RSM to actual and/or liquidated damages in an amount to be proven at trial, plus attorneys' fees, costs, and litigation expenses). RSM will also be entitled to prejudgment interest to the extent available by law.

## V.     PRAYER FOR RELIEF

Wherefore, having fully alleged its claims, RSM prays for the following relief:

A.     For judgment rendered against Defendants and in favor of RSM;

B.     For an award of liquidated and/or actual damages, and attorneys' fees, costs, and expenses against Juergens and Strong on RSM's First Cause of Action, as set forth herein;

C.     For an award of liquidated and/or actual damages, and attorneys' fees, costs, and expenses against Kiley on RSM's First and Second Causes of Action, as set forth herein;

D.     *In the alternative*, for rescission of the Purchase Agreement, and consequently for an award of $500,000 against Kiley plus liquidated and/or actual damages, and attorneys' fees, costs, and expenses against Kiley on RSM's First Cause of Action, as set forth herein;

E.     For prejudgment interest on all amounts awarded, as available by law; and

F.     For all such other and further relief as the Court deems just and equitable.

## VI.     JURY DEMAND

RSM hereby demands a trial by jury.


DATED this 10th day of December, 2009.

COMPLAINT     -8-

DORSEY & WHITNEY LLP
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104
PHONE: (206) 903-8800
FAX: (206) 903-8820

DORSEY & WHITNEY LLP

 /s/ Shawn J. Larsen-Bright
Curt Roy Hineline, WSBA #16317
Shawn J. Larsen-Bright, WSBA #37066
701 Fifth Ave., Suite 6100
Seattle, WA  98104
(206) 903-8800
hineline.curt@dorsey.com
larsen.bright.shawn@dorsey.com

*Attorneys for Plaintiff RSM McGladrey, Inc.*

COMPLAINT    -9-
4818-4114-5093\7

**DORSEY & WHITNEY LLP**
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104
PHONE: (206) 903-8800
FAX: (206) 903-8820